Our second case is 23-4583, United States v. Golestan. Mr. Thompson, whenever you're ready. May it please the court, my name is Jeremy Thompson and I represent Amir Golestan. Mr. Golestan contends the district court erred in denying his motion to withdraw his guilty plea on two bases. One, that the government prosecuted him on an invalid theory of liability. And second, that the district court erred in failing to advise him of the immigration consequences of his guilty plea pursuant to Federal Rule of Procedure 11-B10. He also contends that defense counsel was ineffective for failing to advise him of the immigration consequences of his guilty plea pursuant to Padilla v. Kentucky. Beginning with the Simonelli argument, which I will present on behalf of both Mr. Golestan and the company, Mike Foe. It is our contention that, again, Mr. Golestan and Mike Foe were prosecuted on an invalid basis, an invalid theory of liability, that is the right to control theory of liability. In Simonelli, the Supreme Court announced that the right to control theory, the intangible right to control one's assets is not a valid basis for prosecution under the wire or mail fraud statutes. That is precisely what and how the government chose to prosecute this case. Mr. Golestan, after being indicted, moved to dismiss the indictment. And he argued in that motion that the IP addresses that are assigned by Aaron are not property. And therefore, he could not be prosecuted because he did not deprive Aaron of any property interest. But then counsel and then he lost. The district court ruled against him. And then he had a choice to make. He could either go to trial and then appeal that ruling or he could plead guilty. And he pled guilty. And then 18 months later, he seems to have regretted his choice. But that is not usually grounds for withdrawing a guilty plea. What happened here, Your Honor, is ordinarily, no, it would not be. And if I were to make the argument, and I have not, right, below the, I've not made the argument that IP addresses are not property. Okay, great. So you're agreeing IP addresses are property. Oh, I'm not necessarily agreeing that they are property. But you are not arguing to the contrary. But I'm not arguing, correct. I'm not arguing that the plea should be withdrawn. So your argument for withdrawing the plea rises, apart from the immigration consequences, or falls on whether Ciminelli has something to do with this case? Yes. Okay. Yes. Because what I was going to say, Your Honor, is that the rejoinder from the government to Mr. Golestan's argument that IP addresses are not property was that it does not matter because what Mr. Golestan did was he interfered with Aaron's right to control and assign the IP address. Let me tell you, then, my concern about this. As I read Ciminelli, it is a narrower decision, I think, than the way you are reading it. I think that what it held was that you don't deprive a person of the right to control their property through the withholding of certain information that that person might have liked to have because it would have helped them decide how to control their property. I read it as saying your theory can't be that you have deprived someone of control of their property by withholding information, and that's not what your client was charged with, I don't think. I believe he is. The information that the government alleges that his actions, I guess, withheld from Aaron, were the ability to assign IP addresses to people more worthy than Mr. Golestan. You think this indictment charged your client with withholding information, and what information did it charge him with? I don't believe the indictment did. So this is what happened in Ciminelli. In Ciminelli, the indictment charged traditional property fraud, traditional property interest, and then the government decided to prosecute the case on the right to control theory because the government decided that would be easier to do. That is exactly what happened here. This indictment charges Mr. Golestan with acquiring IP addresses. When Mr. Golestan argued IP addresses are not property, the government said it doesn't matter because what he did was he deprived Aaron of the right to control where the IP addresses are sent. By withholding information? Yes, by providing incorrect information, by providing fraudulent information to Aaron. All right, I think that as I read Ciminelli, there is a big difference between providing fraudulent information and simply withholding something you knew that the owner of the property would also have liked to know. But you just read it differently. Yes, yes, and obviously we can agree to disagree on that point. I believe that Ciminelli is, I guess, broader, as Your Honor is suggesting. Is there an argument that the information that was withheld was what your client intended to do with the addresses? Yes, yes. Because that would have been relevant, that would have been important to the holder of the IP addresses, right? It would have been, yes. But I do not dispute that there is a scheme to defraud. The first aspect to wire fraud and mail fraud, that there be a scheme to defraud, I don't dispute that there is a scheme to defraud, that Mr. Golestan created fictitious companies and sent fictitious information to Aaron in order to obtain IP addresses that he would not have otherwise been able to obtain. I do not disagree that there is a scheme to defraud in that sense. It's in terms of what the property was that he defrauded Aaron of its control over. That is the different question. Could you address, I mean, Judge Harris has also asked you, I think, this issue of timeliness and why after agreeing to plead not guilty and then agreeing to plead guilty, it took, what, 18 months before the motion to withdraw occurred? And I get the point that you think there was a change in the law. You think that's the reason why, that's a sufficient reason why the motion took so long to come before the court? Yes, because I believe if the sequence of events is he moves to dismiss the indictment saying it's not property. Government says it's property because you deprived Aaron of its right to control. District Court says I agree with the government. Motion dismissed. Motion denied. So at that point in time, the law, as Mr. Golestan knows it, is this is property, right? And he pleads guilty on that basis, that this was property, that he was involved in defrauding Aaron of. But that's not dispositive. I mean, the whole point, the reason why he pled not guilty initially is because he had a different view of the law. Why not take that before the jury? If at the end of the transcript, Your Honor, and at the beginning of the guilty plea, defense counsel notes that I believe the reason that they went to trial was not to assert the legal basis that it was not property. Mr. Golestan was going to present an argument that the companies were legitimate and that there's a bench conference where defense counsel speaks to the court saying we investigated this and we found out that's not correct and we're looking at doing a plea agreement. So that was going to be his defense at trial. It was not going to be that. Now, of course, had he proceeded through the trial, right, I could have argued before this court that the motion to dismiss, the motion to dismiss the indictment was improperly denied, right? And I would have Simonelli at that point. But the legal basis for the plea that he had committed property fraud, wire fraud, had been established prior to the plea by the district court in its order denying his motion to dismiss. It was only after the law changed and hadn't even changed by the time he filed his motion. Simonelli had only been argued, not decided. It's only after the law changed that he filed his motion to withdraw his motion. Did Simonelli change the law or simply explicated in a way that may have been different from before? I believe it changed the law. Simonelli explicitly changed the law in the Second Circuit, but this court in Gray had held that, had talked about the right to control one's assets being a valid basis for wire fraud and mail fraud. And I would submit that you can read Gray in a way, right, where because the insurance companies would never have had to pay out the money had Ms. Gray not killed the victims, right? And so you can read it in a way that says it's just traditional property fraud. She would have never – those companies would never have had to pay out the money. But Gray also talks about the right to control and the right of that company to pay its money to the appropriate person, not to Ms. Gray. All right, and that is the right to control one's assets. And that basis has been overturned by Simonelli. And as an alternative holding, that was the holding in this court, and that was the law at the time that Mr. Goldstein entered his guilty plea. I'd like to touch on very briefly, and I know I'll have to do more so in rebuttal, regarding the two immigration consequences arguments. We submit the district court erred in finding that it was not obligated to, and also the defense counsel was not obligated to advise Mr. Goldstein of the immigration consequences of his guilty plea, that being denaturalization and then potentially deportation following denaturalization. Rule 11 speaks in mandatory terms that the district court must give this advice. But it doesn't speak in terms of denaturalization, does it? It speaks in terms of citizenship. And the Sixth Circuit in Attia has held that even though the text of the rule does not speak of denaturalization, does not say of the denaturalization consequences of your guilty plea, the point is to advise someone of the immigration consequences of their guilty plea. And denaturalization and deportation are certainly immigration consequences. But that word would not have been used. I mean there's a standard warning that the district courts give that says nothing about denaturalization. So how would that have put your client on notice that he faced the possibility of denaturalization? Because I believe, Your Honor, if the district court had given the instruction which discussed citizenship, Mr. Goldstein is a very intelligent individual. And I believe he would have realized at that time that if citizenship was at issue, that he would have, and I apologize. It doesn't say that. It says a defendant who is not a united, it doesn't say citizenship is at issue. It says a defendant who is not a United States citizen may be removed or denied citizenship, et cetera. But your client is a citizen. And if anything, I would think maybe that would be counterproductive because it would, if your client is apparently very intelligent, it might assure him, like, good thing I'm a citizen. Because if I weren't, there might be some problems here. And that's, if I may, that was his response. He was asked if he was a citizen. He would think, okay, good, I'm a citizen. I don't have anything to worry about. And that would be wrong. Okay. So I think we're agreeing that if he gets the warning, a defendant who is not a United States citizen may be removed from the United States, that is not going to put him on notice that he is at risk. But I believe the denial of citizenship and the fact that there are immigration consequences to the plea would put him on notice that there would be something to be concerned about. All right. Thank you, sir. Thank you. Mr. Kluge. Good morning. The issue that I'm going to address is the question of when a bankruptcy trustee has taken over an entity that is before the court. Whether the bankruptcy trustees control over that entity and the bankruptcy courts then control over what becomes of that entity and that entity's assets may be essentially terminated by action of an individual who does not have authority to take such action where no attorney represents that the individual has such authority, where the actual record before the district court showed that the person did not have that authority. Can I ask you, so MCFA was represented by counsel at the guilty plea hearing, right? I don't want to call it a guilty plea hearing. I'm sorry. It was supposed to be a guilty plea hearing, but what it was was a guilty plea hearing for Mr. Golestan. But MCFA was represented by counsel at that hearing. MCFA was. There were counsel present. And when Mr. Golestan said, I absolutely have authority to enter this plea, MCFA's counsel didn't say anything, didn't object. Well, what happened was exactly just if it matters to the court, what happened was the district court said, you have authority, don't you? That's what happened. Mr. Golestan, it was a statement. I'm actually literally just asking a question. Did MCFA's counsel object when that colloquy took place? MCFA's counsel did not say a word in the entirety of the MCFA proceeding. They didn't even announce that MCFA was going to plead guilty as far as I read the record. It was a prosecutor who said that. Nor was there a Rule 11 plea colloquy really at all as to MCFA. There was a Rule 11 plea colloquy as to Mr. Golestan, and then the district court said, you have authority to plead for MCFA, don't you? He says, yes. Of course, he's not any kind of a legal authority. There was no suggestion that MCFA was satisfied with his counsel. None of the questions you'd ask in a Rule 11 plea colloquy were asked at all. This was simply completely defective. And, in fact, unlike other cases where it's simply not enough of a record to know whether he was at authority to plead, we had the trial record that showed he absolutely could not possibly have been in. The whole reason the bankruptcy trustee was put in place was to take the authority away from him. So you have one court relying on someone who's clearly not authorized in a colloquy that satisfied zero components of Rule 11 with no participation whatsoever by counsel. And by no means does anyone at that point you have a pro bono attorney who becomes a public defender. And essentially zero representation for MCFA after that point. And so, no, this is not the case where you can say, oh, everything's just fine. It's just a technical violation. This is just a complete breakdown. May I ask you just sort of a factual question? How did MCFA come to have – I understand MCFA and Mr. Golestan had the same lawyer before the district court. How did MCFA come to have separate counsel on appeal? Who retained separate counsel for MCFA on appeal? Retained is an interesting word because that implies money has been changed. But certainly it was not Mr. Golestan who provided the money. If there was any money. Did the trustee hire separate counsel for MCFA? Your Honor, I am not – I was hired by another attorney, so I don't have an answer to those questions. I was not hired by Mr. Golestan. Mr. Golestan is not funding MCFA at this point. And the only reason it was necessary for me to come in on a virtually pro bono basis is because the public defender's office will not represent corporations on appeal. And it is a very important issue. That's why I'm here. I see my time is up. Thank you, Mr. Kluge. Ms. Hoffman. Your Honors. Good morning. Shorter than everybody else, sorry. Andrea Hoffman on behalf of the United States, Your Honors. I'd like to start with the Seminelli issue as well. As Judge Harris was acknowledging or noting to counsel, Seminelli is a much narrower holding than defense counsel would like us to adopt in this court. The standard is actually that there's no property interest in mere interest, in mere information, unless it is tied to a traditional property interest. So it's not saying that there's no interest in information, and it's not saying that right to control has now ceased to be a valid issue ever in any kind of property case. The Fourth Circuit's case law is well established, as far back as Mancuso, through Adler, Gray, Gillian, and as recently as in October of 2023, that a property interest is anything that can be assigned, traded, bought, or otherwise disposed of. That does not do away with any use of the words right to control or the protection of right to exclusive use of issues. It's only in the narrow factual circumstance, as Judge Harris was noting, where it's mere information that's being considered as the property interest. Seminelli's been addressed or cited 32 times since it came down. Not one case has broadened this interpretation beyond the narrow, mere information not tied to property interest analysis, or it was cited for a completely different purpose. So Defense Counsel, Mr. Goldstein, is asking you to take a Supreme Court holding and overturn decades of Fourth Circuit case law in a manner that has not been done by the Supreme Court, and I would urge you not to do that. Once you see that Seminelli does not make the term control an anathema, for lack of a better phrase, the theory under which the government prosecuted this case was plainly well within the traditional property rights. And what was the theory? ARIN is a private corporation that has sole control over the assignment of IP addresses in a particular region. The world is broken up into five different regions. ARIN controls one of the five. And what it is assigning is a property interest that is, quite frankly, tantamount to telephone numbers. You know, when you purchase a telephone, you get a telephone number with it. Well, that telephone number is just numerics, but it creates an access to a broader system of communication across the world. An IP address, I know computer people would tell me I'm simplifying too much, but an IP address is a functionally the same thing. It's a numerical coding that gives you access to something that's much broader. We would not dispute that the telephone, the company's control over that, whatever its categories of numbers aren't property. ARIN's control over these IP addresses, its ability to assign them, administer them, monitor them, regulate them, is a property interest within ARIN's control. And so that was the property interest. And this defendant, as he just conceded today, developed a very complex or articulate scheme to defraud ARIN and preclude it from making those decisions, ability to assign those numbers to appropriate persons. So I'm trying to understand exactly what the basis for the initial plea was before it was with, well, ultimately I guess there was a plea. So I understood that Goldstein argued that IP addresses weren't property below, is that right? Yes. Okay. And the district court neither accepted nor rejected that theory, but instead found sufficient the evidence that he stood accused of depriving ARIN of rights to IP addresses, right? Yes, Your Honor. Okay. So, but doesn't Ciminelli blow that theory out of the water? I don't believe it is, Your Honor, because the thing that ARIN is controlling is an actual thing. It's intangible, albeit. It's a real thing. Another sort of analogy to make, because it is hard to think about an ephemeral thing as a thing. How do you quantify it? If you think back to old-fashioned telephone operators where they had, you know, all the little holes and you pulled up a cord and you stuck the cord and you created a telephone link, that plug or socket is effectively what the IP addresses are. Now, you can't touch them and feel them and see them, but that doesn't make them not a thing, and that's what ARIN controls. That's what ARIN has the authority to administer for one-fifth of the entire world. Right, but the Supreme Court said in Ciminelli and it was said earlier in Cleveland that intangible rights of allocation, exclusion, and control, right, do not amount to property. Isn't that what we have here? No, Your Honor, because that's distinguishing Cleveland, for example. That was a license that was at issue of a regulatory power of the government. If you read Cleveland, 21 times the court discusses the regulatory or police authority of the government, of a governmental entity, and that a license does nothing more than give someone permission to do something they're perfectly capable of doing. They have built those video parlor machines. They worked, but they don't have the ability to do it unless the government gave them permission, a license. That's not what the IP address is. The IP address is more of a functional equivalent of a plug-in socket. It's one-half of a component to make the Internet work. Well, that may be a good factual distinction, but how is that legally relevant in terms of whether or not someone can be guilty of withholding control of intangible property? Well, one, it's a private entity, so that's another big distinction about how they're operating. But two, the case law is well settled in both the Supreme Court and in the Fourth Circuit that property can be intangible and that assignment of rights is a valid property right. In Bowen, in October of 2023, the court specifically, this court in a published opinion, and at 84 Fedforth, I'm forgetting the second site, excuse me for a second, specifically cited 166, Your Honor, sorry, 84 Fedforth 166. The court specifically cited Adler and its terminology, the traditional language going all the way back to Adler, that a property right can be anything that can be assigned, traded, bought, or disposed of. And if you go all the way back to 1947, the Supreme Court in Crane said that property is a physical thing subject to ownership and it is the aggregate of the owner's rights to control or dispose of that thing. So the concept of assigning or controlling isn't the thing that becomes the problem, Your Honor, under Simonelli, it's what were they assigning. It's the context in which it occurs that matters. If I could give you another analogy, because this is sort of ephemeral, so I've been thinking about it a lot in analogies, I apologize. You're at a party. You work for an employer, a scientific employer, and you hear something that you think, oh, my boss would like to know that. Well, that's not a property right of the employer, simply because you heard it there. You go back to your work on Monday, you tell your employer, you start incorporating it into the analysis. Now it might be, or should be, because now it's confidential business information because of how you've incorporated it into your company. But if you're the scientist standing at a party, you're bored and you're in the corner, and you have a breakthrough on something you've been working on for your employer while you're there, that is a property right, right then, because it's the confidential business information of its company. So confidential business information is something that one controls. They can maybe sell it, they can certainly assign it, but it's an ephemeral, intangible thing. Simonelli did not say that that kind of traditional property right no longer exists, and to accept the interpretation of Mr. Goldstein would be to do that. You would be saying that any kind of intangible entity ceases to be able to be controlled because it is so ephemeral. It's a matter of control. It's not like a piece of property where you can see it, touch it, feel it. You can only do this in the intangible realm. So I would argue that Judge Harris's description of the interpretation of Simonelli is a much narrower one and that right to control survives past it so long as it relates to a traditional property interest, or tied is the words that are used in Simonelli, tied to a traditional property interest. And it was in this case because the IP address is an actual thing, ephemeral notwithstanding. It is every IP address is a unique factor. It's a unique identifier. It's a specific entry point to the Internet. It's not, you know, a thought that could be traded in a myriad of ways for a myriad of people. It's a single item to a single receiver. And the fact that they're not sold by Aaron but that they're assigned doesn't make them any less a property interest than the phone numbers would be for a telephone company. If there are no other questions about Simonelli and the right to control theory, I'll move on to the immigration issues. The defendant is asking this court to view this as that you have two choices, that you have to say that there is denaturalization and deportation are exactly the same thing or you're going to create potentially, for example, a circuit split. There's really a third option here as well. The test for reversing a plea in this context at this late juncture is 11H. Harmless error unless there is, excuse me, harmless error if there's a variance from the rules unless the defendant can show that it affected his substantial rights. And the test for that is whether the decision was rational at the time, considering the consequences would likely have worsened for the defendant, and you have to ask yourself as to the substantial rights. What did the defendant know at the time of his plea? What could he have known if he had been receiving all of the information he should receive and how might that affect his decision or how would that affect his decision? This defendant has not demonstrated that it affected his substantial rights. This was a bench trial. May I just ask you what is the government's position on whether it was an error not to give this warning or advisement? The particular piece of the instruction definitely says that it's directed toward noncitizens. Textually, in the beginning of Rule 11, it just speaks to defendants generally. What I would say is that the government acknowledges nothing was said that relates to this. We don't know the government's position on whether it should have been said. That seems weird to me. There's no question that the advisory notes direct the courts to do this in every context because then they don't have to have a mini trial for figuring out whether a particular defendant in front of you is a citizen or noncitizen. There's no question that I would argue that it is best practices to have done it, and it did not happen. There was not a Rule 11 B10 warning. That sounds like a long way of saying that it was an error. Pardon, Your Honor? I didn't hear you. I said that sounds like a long way of saying that it was an error. It's a long way of saying that I don't disagree that the court didn't. Yes, Your Honor, I think it is. I mean, but your point is it didn't matter in the context of this case, right? It did not matter in the context of this case. Given the overwhelming weight of the evidence, where 90% of the trial is completed, the defendant has, the theory of defense, as defense counsel was acknowledging, defendant's theories of defense has fallen apart. A theory of a defense that in a bench trial context had been represented to the court multiple times. The court itself expressed a complete lack of surprise when defense counsel had to come in and tell them that they could no longer proceed on their theory. In fact, the court went on to say that this was, that they had done a great job in an impossible situation, but what a set of facts, huh? The court said the whole scheme didn't make sense. He also made clear, though, on the record with Mr. Goldstein in the courtroom, that the defendant didn't have to present anything, so the theory of their defense falling apart notwithstanding, it wasn't his burden to prove, but that he could not make misrepresentations. And at that juncture, there's a request for plea colloquy. The defendant comes back and, importantly, pleads straight up. The government gave nothing for this plea. There was no negotiated parts away. The defendant pledged straight up, hoping for leniency from the court, hoping for acceptance of responsibility points. His bargaining power at that moment was minuscule at most. The warning, as the court was referencing earlier, would have been as reduced as warning him that there might be a risk of adverse immigration consequences. That's all the court had to have said to have met the Rule 11 context, particularly given that the defendant was at the time a U.S. citizen, and was and is still a U.S. citizen. So given the narrowness of the instruction that could have been given or should have been given versus the weight of the evidence, there is no contemporaneous, as required under the Supreme Court's decision in Lee, evidence that immigration, his citizenship, anything of those consequences, were of significant issue in this. What was clearly of significance was the weight of the government's case and the utter collapse of the defendant's ability to defend because his whole premise had been based on that the Channel Partners were legitimate companies, when, in fact, they were clearly all fraudulent. Now, I know you don't think that we can consider ineffective assistance of counsel on this record, but does the government have a position on whether or not this defendant is subject to denaturalization on this record? The government, the defendant, no. I can't speak to that definitively. I can surmise at most, Your Honor, that's part of why we shouldn't be addressing it. The defendant is subject to denaturalization not because of any conviction. If he's subject to denaturalization, it will be because he did something improper in his denaturalization proceeding, and we don't have that record. We don't know what got said, what he swore to, what he didn't swear to. One can surmise, one assumes that he didn't tell the truth in the denaturalization proceeding, but we don't know that. We don't know what he said or did. Well, I understand your position that we couldn't really take up a Strickland claim on this record, but it did seem to me that before you even get to Strickland, there's sort of a threshold question, the one that the court addressed in Padilla and then in Chaidez, whether Strickland even applies to a failure to give naturalization or denaturalization advice, given that that is a collateral consequence. And usually, if it's a collateral consequence, it's just not even covered by the Sixth Amendment at all. So there's this sort of threshold question that the Second Circuit addressed in Farhane where they said, under Padilla, this is not the kind of collateral consequence that takes it outside the Sixth Amendment altogether. There could be a Strickland claim based on failure to give advice about denaturalization risks, and therefore we will remand to have the Strickland inquiry into deficient performance and prejudice. And I'm wondering, I mean, is it your position that we couldn't reach that threshold legal question today, the question of whether the Sixth Amendment even applies to a failure to give advice about denaturalization under Padilla? Because that seems to me to be just like a pure legal question. It's not fact-dependent. We could answer that today. I do think the court could answer that today. I don't think that the court needs to or that this is necessarily the best record to address. Yeah, but here's my concern. If we don't address it on direct appeal without a record and we wait until it comes to us on habeas, then my guess is the government will be here telling us we can't do it that way either because now it's a new rule and it shouldn't apply on habeas. So I'm trying to figure out how we're ever going to get at that question. Something, Your Honor, I had not thought about that one beforehand, so if you'd give me a half second. Part of the issue for why that I would invite the court not to do this at this point is Padilla's been in effect for 14 years. Farhane is the only case. Yeah, but it's a big one, a very recent Ambon case. I was sort of surprised that you didn't address it in your briefing or in a 28-J after the Ambon. It's directly on point. So you're asked. I didn't mean to interrupt you, Your Honor. No, I'm sorry. I didn't mean to cut you off. Please. I think that the dissent in Farhane got it right, Your Honor, to be honest. I think that this is not. Denaturalization is so much farther removed. This is the body of law that addresses denaturalization and deportation are not synonymous. I totally understand the argument. I was, you know, perhaps we would take it up now and come out that way. I'm just trying to figure out what is the reason for us not to address that threshold legal question one way or the other with the majority or with the dissent in the Second Circuit now. Why should we wait on that? I don't know that I have a particularly great reason for that, Your Honor, other than that I think this is a particularly poor set of facts. In the context of had the defendant been fighting this issue earlier, we would be here in a different context and you'd have a more fulsome record. The reason why it happens in the 22-55 context, and I agree catches you in the new rule problem, is because you do have the fulsome record. More context. We don't have enough context here that with a greater and better developed context, this court might really solidly come down one way or the other for why this isn't the right decision to make, be it the government's perspective that denaturalization is plainly collateral. It's, you know, different courts, different systems. It's a possibility. Then there's the possibility of deportation. It's sort of like calling a separation in a marriage equivalent of a divorce. Those aren't. And they aren't here either. And one of the good examples of that, Your Honor, is when the courts were dealing with Castillo, I believe it is, when the courts were dealing with the question of whether if you're denaturalized, whether that makes you an alien at the time of your conviction, whether it relates back. Because in a denaturalization context, the day you're denaturalized, it relates back to the day you were naturalized. So we're just going to make up a number. It jumps you back five years. But in that intervening five years, you were convicted of a felony, an aggravated felony. Well, the statute for that says at the time of conviction. Technically, you've been denaturalized. So you now no longer were a felon at the time. But the law has not come down that way. The law holds you to being still a citizen at the time of that conviction. So the differences between how denaturalization and deportation are dealt with in the Supreme Court's law specifically make them so distinct that going to the position that Mr. Galston would ask you to hold is an extraordinary extension of Padilla and unnecessary in the context of we have Rule 11B10 on the record now. We're going to get to the right case at the right time to deal with these kinds of contexts. But in this context, where the overwhelming circumstance show you that this was harmless error, this would not be the context is what I would argue. I see I'm well past my time, and I apologize. Thank you very much. Thank you, Ms. Hoffman. I would ask that you affirm. Mr. Thompson? Thank you. Just briefly, Mr. Clue, I believe, is going to waive the remainder of his time on rebuttal. So I just want to address a few points made by the government on its argument. I think I was struck by the very last thing that my friend just said, which was that we have Rule 11B10 now, and we know that that instruction exists, and so the appropriate case will come up. That would be this case if the instruction had been given. The instruction wasn't given. So it seems a bit ‑‑ I'm not exactly sure of the right word, but it seems difficult to me to envision a better scenario. We need to wait until the judge actually gives the instruction that it's supposed to give for a defendant like this in order to get the right case? And obviously we would ask this court to hold that the district court must give that instruction in all cases. But again, it should be this case, but for the district court's error. Regarding addressing Padilla now or later, we would certainly ask this court, if this court finds that there's not enough factual basis in the record, despite defense counsel's admissions that she did not advise Mr. Goldstein of the denaturalization. I'm sorry, where are those admissions in the record? They are in the motion. Yeah, but that's just a brief. Do we have a sworn affidavit about what happened? No, there is not a sworn affidavit. And there very well could have been. And there was not a hearing either. The district court did not convene an evidentiary hearing to address these issues. But no, defense counsel asserted, but I assume defense counsel has a duty to be honest with the court. Yeah, but usually we just don't consider something said in a brief as kind of record material. I understand. But, yes, because addressing Padilla now is important because of the issues that were raised in Farhan about Teague and whether or not advising a defendant who is subject to denaturalization and deportation as a consequence of their guilty plea, whether or not that would be a new rule, you do run into the procedural default problem and the new rule problem of being able to do it in a 2255. The government argued that they questioned what was in Mr. Golestan's application. I submit that if he had said, I committed 19 counts of wire fraud in his N-400, he would not have been admitted as a citizen. And there were 19 of the 20 counts that predated his citizenship. So I think it is safe to assume those answers are not there. He did not admit to committing 19 counts of wire fraud. He would be collaterally stopped in a denaturalization proceeding from arguing that he had not committed those offenses because he pled guilty to them. And finally, I would just – I would address the government's argument about the intangible nature of the – the telephone number for a telephone company is one of the examples that they were giving to compare to this situation for IP addresses. And I agree, the telephone number is intangible in kind of the same way that an IP address is ephemeral. You're assigned one. You connect to it. But that doesn't mean that if you – that the telephone company's interest in assigning telephone numbers is a property interest. And that's what we're dealing with here. It's not whether the phone number itself is a property interest. It's whether the company that assigns the telephone number has an interest in assigning that correctly. And that is comparable to what Aaron is dealing with here, which is that it must assign its – the IP addresses correctly to the appropriate users. That is not a property interest. There are – there is intangible property, intangible property like confidential business interests. Cleveland identified another one, which is a patent holder who has not licensed a patent. There are things where exclusive use and control of the information matters. But that's not an issue for something like Aaron, which is just distributing property. That's no different than distributing money to the appropriate location, which was the issue at Ciminelli. With those arguments, Your Honor, if there are no further questions, we would ask this court to reverse the decision below and permit both Mr. Goldstein and Mike Fote to withdraw their guilty pleas. Thank you, Mr. Thompson. We appreciate the arguments of counsel in this case. We'll come down and greet you and take a brief recess.
judges: Albert Diaz, Pamela A. Harris, Nicole G. Berner